UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No.22-cr-10185-IT |
| (7) XIAN RONG ZENG, | |
| Defendant | |

## GOVERNMENT'S SENTENCING MEMORANDUM

On February 13, 2025, defendant Xian Rong Zeng ("Xian Rong") pleaded guilty pursuant to a plea agreement to Count Three, Operating and Unlicensed Money Transmitting Business, Aiding and Abetting, in violation of 18 U.S.C. §§ 1960 and 2.  Pursuant to the plea agreement, the government is asking the Court to impose a sentence of 2 months of imprisonment followed by 2 years of supervised release.  This is a within-guidelines sentence that the government submits is sufficient but not greater than necessary considering, among other things, the applicable Guidelines sentencing range, the nature of the offense and the defendant's role in the offense, and the need to promote respect for the law and adequate deterrence.

### A.  Sentencing Guidelines

The Presentence Report (PSR) determined that Xian Rong's total offense level is 8.  As detailed in the plea agreement, the government agrees with this total offense level.  This calculation is based on a base offense level of 14, because the defendant is responsible for more than $95,000 but less than $150,000 (USSG § 2S1.3(a)(2) and 2B1.1(b)(1)(E)).  The base offense level is reduced by 2 because defendant was a minor participant in the criminal activity (USSG §3B1.2(b)), by 2 because the defendant promptly accepted responsibility for his criminal activity (USSG §3E1.1), and by 2 because the defendant is a zero-point offender (USSG § 4C1.1).

1

After accounting for these reductions, and with defendant's criminal history category of I, the advisory Guidelines sentencing range is 0-6 months of imprisonment. The government's recommended sentence of 2 months is toward the low-end of the Guidelines sentencing range, which the government submits is appropriate for the reasons set forth in this memorandum and to be articulated at the sentencing hearing.

**B. Nature of the offense and the Xian Rong's Role**

Xian Rong's offense conduct is detailed in the PSR and will not be repeated here in full. In sum, Xian Rong's co-defendants Shi Rong Zhang ("Shi Rong") and Qiu Mei Zeng ("Qiu Mei") operated a large scale money transmitting business out of their restaurant in Boston's Chinatown neighborhood, China Gourmet. The wiretap investigation revealed that Qiu Mei and Shi Rong regularly engaged in currency exchanges between U.S. dollars and Chinese RMB on behalf of customers. Often, customers would travel to China Gourmet to either retrieve or drop off bulk cash U.S. dollars and, in exchange for a fee, Qiu Mei and Shi Rong would then send or accept the equivalent value in Chinese RMB between their accounts in China and the recipients' accounts in China. Over the course of the wiretap interceptions, it was also revealed that Qiu Mei and Shi Rong worked with Qiu Mei's siblings, Xian Rong Zeng, Wei Qing Zeng, and Qiu Fang Zeng, to operate this unlicensed money transmitting business. Specifically, Xian Rong and Wei Qing traveled from Boston to New York to retrieve hundreds of thousands of dollars of bulk U.S. currency at the direction of Qiu Mei and Shi Rong. Xian Rong and Wei Qing then delivered this cash back to China Gourmet, where Qiu Fang helped Qiu Mei count the cash and distribute it to customers of the unlicensed money transmitting business.

In February 2022, investigators intercepted calls in which Shi Rong directed Xian Rong to travel to Flushing, New York to retrieve around $150,000 in bulk cash. Qiu Mei directed Xian

Rong to deliver the cash to Qiu Fang at China Gourmet, and video surveillance outside China Gourmet captured Xian Rong as he delivered a bag containing the cash to the restaurant. In intercepted calls after this delivery, Qiu Fang confirmed that she had counted the money and that it was over $100,000 in cash and ten "cards"—believed to be gift cards containing cash value.

The wiretap interceptions made clear that Xian Rong, Wei Qing, and Qiu Fang assisted the China Gourmet-based unlicensed money transmitting business, and that Shi Rong and Qiu Mei were the ones who operated the business and directed the activities of the three siblings. As a result, in the government's view, the siblings are all less culpable than Shi Rong and Qiu Mei and has agreed that all three siblings should receive a 2-level reduction for their relatively minor roles in the offense. As detailed in the chart on the following page, each of the siblings was involved in facilitating different amounts of money and so their individual guidelines vary slightly.

| Defendant | Offense(s) | Status | Basis for GSR Calculation | GSR | Government Recommended Sentence | Sentence Imposed |
|---|---|---|---|---|---|---|
| Shi Rong Zhang | Money laundering; Unlicensed money transmitting | Trial set for 12/1 | | | | |
| Qiu Mei Zeng | | | | | | |
| Chengzou Liu | Money Laundering, PWID Marijuana | Sentenced | 157 kilos marijuana | 37-46 months | 30 months | 24 months |
| Vincent Feng | Money laundering; Unlicensed money transmitting | Trial set for 12/1 | | | | |
| Da Zeng | | Sentencing 6/27 | $400,000 | 24-30 months (anticipated) | 24-30 months (anticipated)[1] | |
| Wei Qing Zeng | Unlicensed money transmitting | Sentencing 5/28 | $350,000 Minor role Knew funds were unlawful | 12-18 months (anticipated) | 12 months (anticipated) | |
| Xian Rong Zeng | | This defendant | $140,000 Minor role | 0-6 months | 2 months | |
| Qiu Fang Zeng | | Rule 11 5/14 | $600,000 Minor role | 12-18 months (anticipated) | 12-18 months (anticipated)[2] | |

**C.  The need to promote respect for the law and provide adequate deterrence**

The defendants' unlicensed money transmitting business was prolific and involved the movement of millions of dollars over the course of just the few months that agents happened to be intercepting the defendants' telephones.  Their money transmitting business was not registered and made none of the required reports pursuant to the Bank Secrecy Act.  The BSA's financial reporting requirements are crucial to the detection of financial crimes, and the facts here make that

---

[1] The government is awaiting the pre-sentence report for this defendant before deciding on a precise sentence, but the government agreed in the plea agreement to recommend a sentence within the guidelines as calculated by the parties.

[2] The government is awaiting the pre-sentence report for this defendant before deciding on a precise sentence, but the government agreed in the plea agreement to recommend a sentence within the guidelines as calculated by the Court.

clear. Had the China Gourmet money transmitting business appropriately filed currency transaction reports for any of the transactions over $10,000, or had they done any diligence to review and report the suspicious source of the carloads of cash the defendant and his siblings were transporting from New York to Boston, the government would have been readily alerted to the extensive money flowing through China Gourmet, and would have learned that some of the cash being transmitted came from illicit activities, such as co-defendant Chengzou Liu's drug trafficking. Defendants Qiu Mei and Shi Rong proudly and publicly advertising their currency exchange services to the Chinese community, but made no effort to comply with federal regulation of such entities. Although the defendant here served, essentially, as an employee who aided and abetted Qiu Mei and Shi Rong's business, his role was integral in the scheme. Without the carloads of U.S. currency transported by this defendant and his siblings, the money transmitting business would have ground to a halt. Imposing a sentence of incarceration here will send the message that it is unacceptable to ignore the law and operate a black market money transmitting business, and will deter individuals who might otherwise be inclined to help facilitate these illicit currency exchanges.

### D. Government's Recommended Sentence

The plea agreement and corresponding sentencing range afford the defendant every benefit under the USSG. His 0-6 month guideline accounts for his minimal role in the offense, his acceptance of responsibility, and his lack of any criminal history. Within this range and for similarly-situated defendants, the JSIN data suggest that a slightly higher recommendation—closer to the 6 or 7 month average—might be appropriate to avoid unwarranted sentencing disparities. In light of the defendant's health issues, however, the government suggests that a sentence of 2

months appropriately balances all of the factors set forth in 18 U.S.C. § 3553, and is sufficient but no greater than necessary to achieve the goals of sentencing.

## CONCLUSION

For the foregoing reasons and those to be articulated at sentencing, the government asks the Court to impose the requested sentence.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

_/s/ Lauren A. Graber_
Lauren A. Graber
Charles Dell'Anno
Assistant U.S. Attorney

Date:   May 7, 2025

## <u>CERTIFICATE OF SERVICE</u>

Undersigned counsel certifies that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Lauren A. Graber*
Lauren A. Graber
Assistant U.S. Attorney

Dated: May 7, 2025